The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Kim L. Cramer. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing and in the Form 21 Agreement approved by the Industrial Commission as:
STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this claim, all parties being properly before the Commission and subject to and bound by the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between the plaintiff and the defendant-employer at all times relevant to this claim.
3. The parties entered into a Form 21 agreement acknowledging a compensable injury by accident to plaintiff on or about December 1, 1993, the Form 21 being approved by the Commission on April 21, 1994. Pursuant to the Form 21, plaintiff's average weekly wage was $360, yielding a compensation rate of $240.01.
4. The parties also agreed to stipulate to the Forms 33 and 33R contained in the Commission file, which are incorporated by reference.
5. The parties agreed that one issue before the undersigned was whether additional medical treatment recommended by Dr. Miller should be authorized. This issue was listed on the Form 33 filed by plaintiff which the parties have stipulated.
6. Plaintiff contends there is also an issue of additional temporary total disability, to which defendant objects since this issue is not raised on the Form 33.
* * * * * * * * * * *
The Full Commission rejects the findings of fact found by the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. On or about December 1, 1993, the plaintiff sustained an injury by accident, a strain of his low back, which has been accepted as compensable by the employer.
2. Plaintiff was seen on December 8, 1993 by Dr. James E. Bryant, a family practice physician, who indicated plaintiff could return to work after an orthopaedic evaluation.
3. On December 16, 1993, plaintiff was first examined and evaluated by Dr. J. Greg Nelson, an orthopaedic surgeon. Dr. Nelson performed a physical examination. He noted that the plaintiff was in no acute distress. Dr. Nelson diagnosed acute lumbrosacral strain, and treated plaintiff conservatively with non-steroidal medication and recommended he use heat on his back over the weekend. He released plaintiff to return to work the next Monday with restrictions of lifting no greater than 30 pounds.
4. On December 20, 1993, plaintiff again saw Dr. Nelson, complaining that he could not work. Dr. Nelson noted that plaintiff's MRI results were normal, x-rays were normal, and he refused to keep plaintiff out of work. Plaintiff was upset about this and told Dr. Nelson he would seek another opinion.
5. Plaintiff sought a second opinion from Dr. David C. Miller, an orthopaedic surgeon, who first saw him on March 17, 1994. Dr. Miller diagnosed a chronic lumbar strain and recommended an aggressive course of physical therapy and cortisone injections. Dr. Miller found plaintiff's examination to be significantly less than normal.
6. Plaintiff continued to see Dr. Nelson about once per month up through May 25, 1994 with continued complaints of low back pain. However, his examinations continued to be normal and plaintiff did not appear to be in any discomfort during the examinations. On May 25, 1994, when Dr. Nelson came into the examining room, he found the plaintiff "fast asleep". Dr. Nelson did not believe pain medication was appropriate under the circumstances and refused plaintiff's request that he prescribe such medicines.
7. Plaintiff reported to Matthews Physical Therapy on or about April 5, 1994, and April 6, 1994. However, he did not report for therapy on April 7, complaining of pain. Plaintiff later reported to Dr. Miller that he was unable to perform the physical therapy, which is recorded in Dr. Miller's notes of November 22, 1994. On that same date Dr. Miller noted the plaintiff would continue working and return to see him as needed.
8. Dr. Nelson was of the opinion that the cortisone injections recommended by Dr. Miller would be of no benefit to plaintiff. The carrier did authorize some injections; however, Dr. Miller believed physical therapy would be an appropriate remedy for plaintiff's pain.
9. The greater weight of the evidence of record established that the treatment prescribed by Dr. Miller, the physical therapy and the cortisone injections, was reasonably necessary to effect a cure, give relief or lessen the period of disability and should therefore be approved.
10. The issue of temporary total disability and permanent partial disability shall be reserved for subsequent determination by a Deputy Commissioner.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSION OF LAW
1. Plaintiff has established by the greater weight of the evidence that the additional medical treatment for which he is seeking approval would tend to effect a cure or give relief or lessen the period of his disability. Plaintiff proved that the defendant should be required to pay for these services pursuant to N.C.G.S. §§ 97-2(19) and 97-25.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
ORDER
1. Under the law, the plaintiff's claim for medical treatment provided by Dr. Miller is allowed.
2. Defendant shall pay for all medical treatment rendered or recommended by Dr. Miller including services rendered by the Matthews Physical Therapy Center.
3. Defendant shall pay all costs including an expert witness fee of $260.00 to Dr. Miller.
4. Plaintiff's counsel and defendant's counsel shall confer and agree upon another doctor to conduct an independent medical evaluation of plaintiff. The parties shall have 30 days to confer and carry out this Order. In the event the parties cannot agree, the Industrial Commission will decide this issue in due course.
5. The issue temporary total disability and permanent partial disability is reserved for subsequent determination by a deputy commissioner.
FOR THE FULL COMMISSION
 S/ ________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ ___________________ BERNADINE S. BALLANCE COMMISSIONER
DISSENTING:
S/ _____________ DIANNE C. SELLERS COMMISSIONER
CMV/cnp/mj 5/30/96